RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0043p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

     *Plaintiff-Appellant,*

 *v.*

          No. 09-5737

JERRY THOMAS BUFORD, JR.,

      *Defendant-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 09-00021-001—Aleta Arthur Trauger, District Judge.

Argued: October 20, 2010

Decided and Filed: February 10, 2011

Before: GILMAN and GRIFFIN, Circuit Judges; ROSE, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Joseph Alexander Little, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellant. Michael C. Holley, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellee. **ON BRIEF:** Addison Thompson, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellant. Michael C. Holley, Hugh M. Mundy, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

 GRIFFIN, Circuit Judge. Following a traffic stop on May 18, 2008, Nashville Police arrested defendant Jerry Thomas Buford, Jr. and searched the vehicle in which

---

[*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

he was riding, as was then permitted by the precedent of the Court of Appeals for the Sixth Circuit. *See, e.g.*, *United States v. White*, 871 F.2d 41, 44 (6th Cir. 1989). Based upon the evidence obtained from the search and his subsequent statement to the police, Buford was indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. Shortly before trial, the Supreme Court in *Arizona v. Gant*, 129 S. Ct. 1710 (2009), overruled this court's holdings regarding vehicle searches incident to arrest. In light of *Gant*, the district court granted Buford's motion to suppress all evidence connected to the search of his vehicle, including his statement to the police. The government now timely appeals, and we reverse and remand for further proceedings. In doing so, we hold that the good-faith exception precludes application of the exclusionary rule when police act in objectively reasonable reliance upon clear and settled Sixth Circuit precedent that is later overruled by the United States Supreme Court. Accordingly, we reverse the district court's order granting Buford's motion to suppress and remand for further proceedings consistent with this opinion.

I.

On May 18, 2008, shortly after midnight, officers of the Metropolitan Nashville Police Department ("MNPD") conducted a traffic stop of an automobile registered to Buford and occupied by two men. The stop was made after an officer checked the vehicle's plate registration and learned that its owner-registrant, defendant Buford, had an outstanding arrest warrant for a probation violation.

Following the stop, an officer spoke with the driver, defendant Buford. The officer verified Buford's identity and the validity of the warrant before taking him into custody. His passenger, Kristopher Lawson, was also removed from the automobile. During a subsequent search of the vehicle incident to arrest, MNPD Officer Justin Chisolm recovered a loaded Ruger .45 caliber pistol underneath the front passenger seat.

Buford was transferred to the Davidson County Criminal Justice Center ("DCCJC") for booking on his probation violation. According to the district court, "[a]s the defendant and the officers were approaching the DCCJC, the defendant, in conjunction with a conversation about contraband, apparently volunteered that the gun

'was in the car [be]cause people try to rob me for the truck.'" Buford was charged with unlawful possession of the gun.

Based upon the recent authority of *Arizona v. Gant*, Buford moved to suppress the firearm and his statement. In *Gant*, the Supreme Court held that a warrantless search of an automobile incident to a recent occupant's arrest violates the Fourth Amendment unless "the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 129 S. Ct. at 1723. In the district court, Buford maintained that "at the time of the search, [he] was handcuffed and locked inside a patrol car. Likewise, Lawson was removed from the Blazer and was without access to the passenger area." Buford also alleged that he "was arrested due to an outstanding warrant for a probation violation. . . . [and] [t]hus, the search of his car was not based upon a reasonable expectation that evidence related to that violation would be found therein." In response, the government conceded "that, for purposes of the facts of this specific case, the search incident to the arrest did not fall within the parameters elaborated in *Gant*."

The district court held a June 11, 2009, suppression hearing at which Officer Chisolm and MNPD Officer Chris Gilder, a legal instructor at the MNPD Training Academy, testified.[1] Officer Chisolm testified that he took a police course taught by Gilder in December 2005 that included training related to the search of vehicles. According to Gilder, prior to April 22, 2009, police-academy participants in his course received the following instructions regarding searches of vehicles incident to arrest: "[W]hen a person is taken into custody . . . their person may be searched . . . . And in the context of a motor vehicle, [the permissible search area] would include the passenger compartment . . . and any unlocked containers that are located within it." Gilder further testified that "this instruction" did not "depend on whether the subject was in handcuffs or" on "the underlying cause of arrest . . . ." This instruction was consistent with Sixth Circuit precedent on May 18, 2008, when Buford's vehicle was stopped and searched.

---

[1] Gilder is licensed to practice law in Tennessee.

On June 11, 2009, the district court granted Buford's motion to suppress. The district court reasoned that under the retroactivity principle and, specifically, *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), "the rule in *Gant* applies with the same force as if *Gant* were on the books at the time of the defendant's arrest." In its ruling, the district court held that the good-faith exception to the exclusionary rule did not apply.

The government timely appeals.

## II.

"The grant or denial of a motion to suppress is a mixed question of fact and law. On appeal, we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Ellis*, 497 F.3d 606, 611 (6th Cir. 2007) (citations omitted). This case presents solely a legal question, and thus we review it de novo.

## III.

The Fourth Amendment guarantees the right of liberty against unreasonable searches and seizures by providing:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

However, "there [are] exceptions to the warrant requirement." *United States v. U.S. Dist. Court for the E. Dist. of Mich.*, *S. Div.*, 407 U.S. 297, 318 (1972) (citing *Chimel v. California*, 395 U.S. 752 (1969)). Relevant to the present case, the law is well established that when police make an arrest, they may search "the arrestee's person and the area 'within his immediate control'" without obtaining a warrant. *Chimel*, 395 U.S. at 763. That rule is justified by the need "to remove any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape[,]" and the need to prevent

the "concealment or destruction" of evidence. *Id*. at 763; *accord Thornton v. United States*, 541 U.S. 615, 620 (2004); *Knowles v. Iowa*, 525 U.S. 113, 116-17 (1998).

In *New York v. Belton*, 453 U.S. 454 (1981), the Supreme Court applied its search-incident-to-arrest jurisprudence to the motor-vehicle context. The Court highlighted the difficulty in determining the precise area within the immediate control of the arrestee, noting "that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].'" *Id.* at 460 (alteration in original) (quoting *Chimel*, 395 U.S. at 763). Expressing a desire to establish a "workable rule[,]" the Court held "that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id*. at 460 (footnote omitted).

In this circuit, before *Gant*, "our consistent reading of *Belton* ha[d] been that, once a police officer has effected a valid arrest, that officer can search the area that is *or was* within the arrestee's control." *White*, 871 F.2d at 44. We, like the majority of other circuits, interpreted *Belton* to allow law enforcement officers to search a vehicle incident to a lawful custodial arrest of its occupants without a warrant or probable cause, "even after the arrestee was handcuffed and placed in the backseat of a police cruiser." *United States v. Patterson*, 993 F.2d 121, 123 (6th Cir. 1993) (per curiam); *see also United States v. Nichols*, 512 F.3d 789, 797 (6th Cir. 2008). "Although there [was] a split in the circuits on this point, we [had] not wavered in our adherence to this rule." *Patterson*, 993 F.2d at 123 (footnote omitted). Thus, when the search occurred in this case on May 18, 2008, there was no doubt as to its constitutionality in the Sixth Circuit, if not most of the country. *See Gant*, 129 S. Ct. at 1718 (acknowledging that *Belton* was "widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there [was] no possibility the arrestee could gain access to the vehicle at the time of the search").

This changed when the Supreme Court decided *Gant* on April 21, 2009. In *Gant*, the Supreme Court clarified its holding in *Belton*, as well as its subsequent application of that ruling in *Thornton*, and held that the search of a vehicle incident to the arrest of a recent occupant is justified only if the arrestee was unrestrained and within reaching distance of the passenger compartment at the time of the search, or if it was reasonable for the arresting officers to believe that evidence relevant to the crime of arrest might be found in the vehicle. *Gant*, 129 S. Ct. at 1723. The Supreme Court thus rejected any broad understanding of *Belton* as applying the *Chimel* rationale to searches beyond the arrestee's reaching distance.[2] *Id.* at 1718-19.

It is firmly established that a decision of the Supreme Court declaring a new constitutional rule applies "to all similar cases pending on direct review." *Griffith*, 479 U.S. at 322-23; *see also United States v. Johnson*, 457 U.S. 537, 562 (1982) (holding that a decision of the Supreme Court "construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered"). This is true even when a Supreme Court decision adopts a new rule that constitutes a "clear break" with past cases. *Griffith*, 479 U.S. at 328 (internal quotation marks omitted). Consequently, because Buford's case was not yet final when *Gant* was decided, he benefits from the rule announced in that decision.

As the government concedes, when *Gant* is applied to the facts of this case, it is clear that the vehicle search in question violated Buford's Fourth Amendment rights. Here, both Buford and his passenger were secured and therefore unable to reach the passenger compartment of the vehicle at the time of the search. Moreover, Buford was arrested for a probation violation, "an offense for which police could not expect to find

---

[2]As an initial matter, Buford argues that the good-faith exception argued by the government is not presented on the record facts, and thus this court should dismiss the appeal without reaching that issue. Here, both parties clearly established that the search in question occurred after both Buford and his passenger were out of reach of the vehicle's passenger compartment. Chisolm testified that he did not begin his search of the vehicle until Buford was in handcuffs and walking away from the vehicle. Moreover, Chisolm stated that his understanding, prior to *Gant*, was that he was permitted to search "where [arrestees] *were* when they were arrested[,] and that he conducted "that type of search . . . on May 18, 2008 of the defendant's car[.]" (Emphasis added.) Similarly, Buford argued to the district court that "at the time of the search, [he] was handcuffed and locked inside a patrol car. Likewise, Lawson was removed from the Blazer and was without access to the passenger area." Given these facts, we hold that the issue brought by the government is properly before us.

evidence in the passenger compartment . . . ." *Gant*, 129 S. Ct. at 1719.  Thus, although the search Officer Chisolm undertook in this case was done in accordance with our well-settled precedent at the time it was conducted, we must still hold, pursuant to *Gant*, that the search of Buford's vehicle was unconstitutional.

## IV.

However, our determination that the search violated Buford's constitutional rights is not dispositive of this appeal.  As the Supreme Court has repeatedly stated, the suppression of evidence "is not an automatic consequence of a Fourth Amendment violation." *Herring v. United States*, 129 S. Ct. 695, 698 (2009); *see also id.* at 700 (noting that the Supreme Court has "repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation").  Indeed, although "[t]he Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,'" it "'contains no provision expressly precluding the use of evidence obtained in violation of its commands[.]'" *Id.* at 699 (second alteration in original) (quoting *Arizona v. Evans*, 514 U.S. 1, 10 (1995)).

To address violations of the Fourth Amendment, the Supreme Court established "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring*, 129 S. Ct. at 699.  The Court has emphasized, however, that "the exclusionary rule is not an individual right and applies only where it 'result[s] in appreciable deterrence.'" *Id.* at 700 (alteration in original) (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)).  Because the exclusion of probative evidence both imposes a "costly toll upon truth-seeking and law enforcement objectives" and "offends basic concepts of the criminal justice system" by "letting guilty and possibly dangerous defendants go free," the Court has made clear that "the benefits of deterrence must outweigh the costs" in order to warrant the exclusion of evidence obtained in violation of the Fourth Amendment.  *Id.* at 700-01 (citations and internal quotation marks omitted); *see also United States v. Masters*, 614 F.3d 236, 243 (6th Cir. 2010) (noting that the Supreme Court's recent jurisprudence "weighed more toward preserving

evidence for use in obtaining convictions, even if illegally seized, than toward excluding evidence in order to deter police misconduct unless the officers engage in 'deliberate, reckless, or grossly negligent conduct.'") (quoting *Herring*, 129 S. Ct. at 702).

"To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 129 S. Ct. at 702. As a result, "evidence should be suppressed '*only* if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" *Id*. at 701 (emphasis added) (quoting *Illinois v. Krull*, 480 U.S. 340, 348-49 (1987)). Thus, "the Supreme Court has held suppression is not an available remedy when police officers conducted a search in good faith reliance on some higher authority, such as a warrant or a statute, even if the warrant or statute were later held invalid or unconstitutional (the 'good faith exception')." *United States v. Gonzalez*, 598 F.3d 1095, 1101 (9th Cir. 2010) (Bea, J., dissenting from the denial of rehearing en banc).

Here, we must decide whether the exclusionary-rule remedy requires that we suppress the fruits of the unconstitutional search of Buford's vehicle notwithstanding the police's reliance on "a different kind of authority, namely" this circuit's well-settled case law. *Id*. At the outset, we recognize that, although neither this court nor the Supreme Court has previously addressed the precise issue at hand,[3] four other circuits have addressed the question presented in this appeal.[4] *See United States v. Jackson*, 825 F.2d 853 (5th Cir. 1987) (en banc), *cert. denied*, 484 U.S. 1011 (1988); *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1686 (2010); *Davis*,

---

[3]We note, however, that the Supreme Court recently granted certiorari to address the question that the instant case presents. *See United States v. Davis,* 598 F.3d 1259 (11th Cir. 2010), *cert. granted*, 131 S. Ct. 502 (2010).

[4]The Seventh Circuit has "expressed skepticism about applying the [exclusionary] rule's good-faith exception when police had relied solely on caselaw in conducting a search[.]" *Davis,* 598 F.3d at 1263-64 (discussing *United States v. Real Prop. Located at 15324 Cnty. Highway E.*, 332 F.3d 1070, 1076 (7th Cir. 2003)); *see also United States* v. *Brunette*, 256 F.3d 14, 19 (1st Cir. 2001) (holding that "the uncertain state of the law at the time made reliance on the warrant objectively reasonable" even though the warrant was held unlawful in precedents handed down after the search occurred).

598 F.3d at 1266; *United States v. Gonzalez*, 578 F.3d 1130 (9th Cir. 2009), *petition for cert. filed*, 79 U.S.L.W. 3062 (U.S. July 14, 2010) (No. 10-82). "[W]hile we recognize that we are not bound by the law of other Circuits, this court has . . . routinely looked to the majority position of other Circuits in resolving undecided issues of law. We also take note of the importance of maintaining harmony among the Circuits on issues of law." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 827-28 (6th Cir. 2009) (citations omitted).

Both the Tenth and Eleventh Circuits have decided cases nearly identical to the one presented here, i.e., situations in which the police have conducted searches later made unconstitutional by *Gant*, but which were, at the time they were conducted, consistent with circuit pre-*Gant* precedent. The defendant in each case, like Buford, argued that *Griffith*'s retroactivity rule required the court to suppress the evidence. These courts rejected the claim, reasoning that "[r]elying on a court of appeals' well-settled and unequivocal precedent is analogous to relying on a statute, . . . or a facially sufficient warrant, . . . not to personally misinterpreting the law." *Davis*, 598 F.3d at 1267-68; *see also McCane*, 573 F.3d at 1045. Accordingly, our sister circuits held that, by application of the good-faith exception, "the exclusionary rule does not apply when the police conduct a search in objectively reasonable reliance on . . . well-settled precedent, even if that precedent is subsequently overturned." *Davis*, 598 F.3d at 1264; *see also McCane*, 573 F.3d at 1045.**[5]**

The Fifth Circuit reached the same holding in *Jackson,* 825 F.2d at 854. *Jackson* overturned Fifth Circuit precedent that had allowed warrantless searches at a checkpoint under the border search exception to the Fourth Amendment. *Id.* The en banc court in *Jackson* ruled that the checkpoint searches were unconstitutional, but then applied the good-faith exception and affirmed the convictions in light of the officers' reasonable

---

**[5]**A number of state supreme courts have also held "that the exclusionary rule should not apply where the officers relied in good faith on clear and settled law that was only subsequently changed." *State v. Dearborn*, 786 N.W.2d 97, 106-07 (Wis. 2010); *State v. Baker*, 229 P.3d 650, 663-64 (Utah 2010) ("[E]vidence obtained in objective reasonable reliance on settled judicial precedent that is later overturned should not be excluded."); *State v. Frederick,* 236 P.3d 1269, 1276 (Idaho 2010) ("It is our view that retroactivity rules do not preclude application of the good faith exception when an officer relies on case law."). *But cf. State v. McCarty*, 229 P.3d 1041 (Colo. 2010)*.*

reliance on Fifth Circuit law. *Id*. at 866. The court reasoned that officers who relied on then-existing circuit precedent were not acting lawlessly and did not need to be deterred. As a result, the court determined that "the exclusionary rule should not be applied to searches which relied on Fifth Circuit law prior to the change of that law on the date of the delivery of this opinion." *Id*.; *see also United States v. Morgan*, 835 F.2d 79, 80-81 (5th Cir. 1987) (applying good-faith exception for changed interpretations of law recognized by *Jackson*).

In stark contrast to the rulings of the Fifth, Tenth, and Eleventh Circuits, the Ninth Circuit has rejected the good-faith exception on substantially similar facts. *See Gonzalez*, 578 F.3d at 1131-33. Like the defendant here, Gonzalez was lawfully stopped while riding in a vehicle. *Gonzalez*, 598 F.3d at 1101 (Bea, J., dissenting from the denial of rehearing en banc). "After the vehicle was apparently secure against any risk to the officer, and the vehicle's occupants had moved away from the vehicle, [the officer] searched the vehicle and discovered Gonzalez's 9mm pistol in the glove compartment." *Id*. Gonzalez was subsequently convicted for possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). *United States v. Gonzalez*, 290 F. App'x 51, 51-52 (9th Cir. 2008). Following its well-settled precedent, the Ninth Circuit affirmed in an unpublished decision. *Id*. at 52. However, after the Supreme Court decided *Gant*, it remanded the *Gonzalez* case for further consideration in light of that decision. *See Quintana v. United States*, 129 S. Ct. 2156 (2009); *see also Gonzalez*, 578 F.3d at 1131.

On remand, the Ninth Circuit ruled that the good-faith exception did not apply and therefore reversed the conviction. *Gonzalez*, 578 F.3d at 1133. The court reasoned that applying the good-faith exception would "violate the integrity of judicial review by turning the court into, in effect, a legislative body announcing new rules but not applying them, rather than acting in our proper role as an adjudicative body deciding cases." *Id*. at 1132 (citation and internal quotation marks omitted). Further, the Ninth Circuit explained that the good-faith exception was not applicable because its application would conflict with the Supreme Court's retroactivity decisions:

> [T]his case should be controlled by long-standing precedent governing the applicability of a new rule announced by the Supreme Court while a case is on direct review. The Court has held that "a decision of this Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered." *United States v. Johnson*, 457 U.S. 537, 562 (1982); *see Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) (finding that even decisions constituting a "clear break" with past precedent have retroactive application). This precedent requires us to apply *Gant* to the current case without the overlay of an application of the good faith exception. To hold that *Gant* may not be fully applied here, as the Government urges, would conflict with the Court's retroactivity precedents.

*Id.* Because, in *Gant*, the Arizona Supreme Court had "ordered the suppression of the evidence found as a result of the unconstitutional search[,]" and the United States Supreme Court affirmed that judgment, the Ninth Circuit concluded that the same outcome was required in *Gonzalez*. *Id.* at 1133. In so doing, the Ninth Circuit emphasized that its exclusionary rule holding was ultimately "concerned . . . with the Fourth Amendment rights of the defendant." *Id.* at 1133 n.1.

The Ninth Circuit subsequently denied the government's petition for rehearing en banc. Seven judges dissented from the denial, stating that the panel's decision conflicted with *Herring*, and that suppressing evidence obtained by police who relied on pre-*Gant* law would not further the sole rationale of the exclusionary rule – deterrence of police misconduct. *Gonzalez*, 598 F.3d at 1100-09 (Bea, J., dissenting from the denial of rehearing en banc).

In an opinion concurring in the denial of rehearing en banc, Judge Betty Fletcher, joined by the other two original panel members, explained the panel's reasoning more fully and reiterated that "[t]he precedents that controlled our decision in *Gonzalez* were those dealing with retroactivity." *Id.* at 1097 (B. Fletcher, J., concurring in the denial of rehearing en banc). Judge Fletcher added that, in the panel's view, the Supreme Court's 1982 decision in *Johnson* had confronted the "precise[]" question in this case and had "held that the exclusionary rule applied to cases pending on direct appeal." *Id.* at 1099. Moreover, Judge Fletcher found it important to "bear in mind that this case

deals with a defendant's right to suppress evidence obtained by an unconstitutional search." *Id*. at 1097. Thus, she opined that the seven dissenting judges would incorrectly deny that "individual right[]" to suppression. *Id.*

Buford urges us to adopt the reasoning of the Ninth Circuit majority. But the Ninth Circuit's reasoning – in both the panel opinion and the opinion concurring in the denial of rehearing en banc – is flawed in several respects. Most egregiously, the Ninth Circuit erred in concluding that suppression was compelled by the Supreme Court's decisions in *Johnson*, *Griffith*, and *Gant*. *Johnson* and *Griffith* reiterate the established principle that, on direct review, judicial evaluation of the constitutionality of a search must accurately resolve the constitutional questions by recourse to all authoritative decisions of the Supreme Court, including those issued after the search in question. Thus, as discussed above, *Gant*'s Fourth Amendment holding compels the conclusion that vehicle searches based on this circuit's pre-*Gant* law are unconstitutional. *Gant*, however, does not address the issue of the good-faith exception to the exclusionary rule, which applies only after an underlying search is held unconstitutional. Moreover, the retroactivity doctrine articulated in *Johnson* and *Griffith* does not control the application of the good-faith exception.

Contrary to the Ninth Circuit's reasoning, we view *Johnson* as consistent with the application of the good-faith exception in this case. As Judge Bea explained in his opinion dissenting from the Ninth Circuit's denial of rehearing en banc:

> The Court in *Johnson* argued that suppressing evidence seized in a search conducted under "unsettled" law might have a deterrent effect on police, even though suppressing evidence seized in a search conducted under "settled" law would not. 457 U.S. at 560-61. *Johnson*, far from supporting the panel's opinion, actually provides an example where the Supreme Court held that the police officer's reliance on case law was not objectively reasonable. *Johnson* is consistent with the application of the good faith exception announced two years later in *Leon*. In *Johnson*, the issue was searches incident to warrantless home arrests. The Court held that [that] area of law was "unsettled" and that "[l]ong before *Payton* [*v. New York*, 445 U.S. 573 (1980)], for example, this Court had questioned the constitutionality of warrantless home arrests. Furthermore, the Court's opinions consistently had emphasized that, in light of the

> constitutional protection traditionally accorded to the privacy of the
> home, police officers should resolve any doubts regarding the validity of
> a home arrest in favor of obtaining a warrant." *Id.* at 560-61.
>
> Therefore, the panel's concurrence to the order denying rehearing en
> banc errs in likening *Gant* to *Payton*; the panel's concurrence overlooks
> that law may be *settled* by courts other than the Supreme Court. [*United
> States v. Peltier*, 422 U.S. 531, 542 (1975)].

*Gonzalez*, 598 F.3d at 1108-09 (Bea, J., dissenting from the denial of rehearing en banc) (first and second alteration in original).[6]

Here, it is clear that, at the time Officer Chisolm acted, his actions were in compliance with the well-settled law of this circuit. The Sixth Circuit was among the legion of courts that had interpreted *Belton* "to allow a vehicle search incident to the arrest of a recent occupant even if there [was] no possibility the arrestee could gain access to the vehicle at the time of the search." *Gant*, 129 S. Ct. at 1718. Justice Scalia's concurring opinion in *Thornton* specifically cites the Sixth Circuit's decision in *White* as among that "legion" of courts. *Thornton*, 541 U.S. at 628 (Scalia, J., concurring). And five members of the Supreme Court in *Gant* concluded that the lower courts had, in fact, adopted the best understanding of *Belton*'s rule.[7] That understanding of the *Belton* rule accorded with what "ha[d] been widely taught in police academies" for over a quarter century and had been followed by law enforcement officers in the field "in conducting vehicle searches during [that period]." *Gant*, 129 S. Ct. at 1722.

---

[6]*Griffith* is also distinguishable because it was a Fourteenth Amendment case that did not deal with the remedy of exclusion. As Judge Bea noted in his dissent,

> *Griffith* was about *Batson* challenges and therefore about defendants' Fourteenth
> Amendment rights – a right held by the individual defendant. A prosecutor's violation
> of a defendant's Fourteenth Amendment rights does not raise the issue of deterrence that
> is inherent to the judicially created exclusionary rule. Nor does it raise the balancing
> test issues central to the Court's decision in *Herring*, 129 S. Ct. at 700.

*Gonzalez*, 598 F.3d at 1109 (Bea, J., dissenting from the denial of rehearing en banc) (citation omitted).

[7]For Justice Scalia, the lower courts had adopted the best reading of "the rule set forth in [*Belton*]" as "automatically permitting a [vehicle] search when the driver or an occupant is arrested[,]" *Gant,* 129 S. Ct. at 1724 (Scalia, J., concurring), but he concurred in the majority opinion in order to provide the Court with a majority for its decision. *Id.* at 1725 (explaining that "a 4-to-1-to-4 opinion" would be unacceptable). The four dissenting Justices agreed with that reading of *Belton* and would have retained it. *See id.* at 1725 (Breyer, J., dissenting); *id.* at 1726-27 (Alito, J., dissenting) (joined by the Chief Justice, Justice Kennedy, and, in pertinent part, Justice Breyer).

In our view, the Ninth Circuit disregarded well-established principles requiring consideration of deterrence before suppressing evidence due to its misinterpretation of *Griffith* and *Johnson*, and its assumption that the question before it pertained to the substance of Fourth Amendment rights. The court emphasized, for instance, that its suppression decision "concerned . . . the Fourth Amendment rights of [respondent]." *Gonzalez*, 578 F.3d at 1133 n.1. Judge Fletcher's opinion for the panel concurring in the denial of rehearing confirms the panel's view that *Gonzalez* concerned respondent's "right to suppress evidence obtained by an unconstitutional search." *Gonzalez*, 598 F.3d at 1097 (B. Fletcher, J., concurring in the denial of rehearing en banc). The Supreme Court, however, has consistently held that "the exclusionary rule is not an individual right." *Herring*, 129 S. Ct. at 700; *see, e.g., Krull*, 480 U.S. at 347; *Leon*, 468 U.S. at 906; *Stone v. Powell*, 428 U.S. 465, 486, 495 n.37 (1976). The rule is simply a "'judicially created remedy[,]'" *Leon*, 468 U.S. at 906 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)), that "has never been applied except 'where its deterrence benefits outweigh its 'substantial social costs[.]'" *Hudson v. Michigan*, 547 U.S. 586, 594 (2006) (quoting *Penn. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363 (1998)).

Nothing in the *Gant* decision justifies a departure from the Supreme Court's long standing good-faith-exception precedent. Indeed, *Gant* had no occasion to address remedial issues because the question presented in *Gant* addressed only the underlying Fourth Amendment issue governing the constitutionality of the vehicle search.[8] In *Gant*, the state's briefs on the merits thus focused entirely on that constitutional question and did not suggest, much less argue as an alternative, that the good-faith exception would warrant reversal.

---

[8] The Supreme Court granted certiorari on the following question: "Does the Fourth Amendment require law enforcement officers to demonstrate a threat to their safety or a need to preserve evidence related to the crime of arrest in order to justify a warrantless vehicular search incident to arrest conducted after the vehicle's recent occupants have been arrested and secured?" *Arizona v. Gant*, 552 U.S. 1230 (2008). Therefore, the Court considered only whether the search violated the Fourth Amendment. *See* S. Ct. R. 14.1(a); *Yee v. Escondido, Cal.*, 503 U.S. 519, 535-36 (1992).

V.

The Supreme Court's jurisprudence is clear: "Whether the exclusionary sanction is appropriately imposed in a particular case . . . is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'" *Leon*, 468 U.S. at 906 (quoting *Illinois v. Gates*, 462 U.S. 213, 223 (1983)); *see also Masters*, 614 F.3d at 242 ("[T]he Supreme Court has . . . emphasized that the decision to exclude evidence is divorced from whether a Fourth Amendment violation occurred."). The latter was decided by *Gant*; the former was not. Thus, "[t]he issue before us . . . is not whether the Court's ruling in *Gant* applies to this case, it is instead a question of the proper remedy upon application of *Gant* to this case.'" *McCane*, 573 F.3d at 1044 n.5. That remedy is governed by the Supreme Court's decisions in *Leon*, *Evans, Krull*, and *Herring*.

When this case is properly viewed in that context, it is apparent that suppression is not warranted. Although the Supreme Court has not yet directly addressed the question presently before this court, its review of comparable issues is instructive. In *Leon*, the Court declined to require suppression when an officer reasonably relied on an invalid warrant to conduct the search because "[p]enalizing the officer for the [court's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." 468 U.S. at 920-21. The same holding applies when an officer relies on a statute later declared invalid, *Krull*, 480 U.S. 340, 359-60; on judicial records that erroneously reflect an outstanding warrant, *Evans*, 514 U.S. at 14-16; or on the police's own warrant database that, through police negligence, erroneously contains a withdrawn warrant. *Herring*, 129 S. Ct. at 704.

Applying the governing legal principles of these decisions to the facts of the case before us, we join the Fifth, Tenth, and Eleventh Circuits in holding that exclusion is not the appropriate remedy when an officer reasonably relies on a United States Court of Appeals' well-settled precedent prior to a change of that law.[9] *See Peltier*, 422 U.S. at

---

[9]Like the Eleventh Circuit, we also "stress, however, that our precedent on a given point must be unequivocal before we will suspend the exclusionary rule's operation." *Davis*, 598 F.3d at 1266.

542 ("[U]nless we are to hold that parties may not reasonably rely upon any legal pronouncement emanating from sources other than this Court, we cannot regard as blameworthy those parties who conform their conduct to the prevailing statutory or constitutional norm."). The fact that appellate precedent is later overturned is not enough to justify suppression, since the "exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges[,]" *Leon*, 468 U.S. at 916, and there is "no meaningful distinction" between relying on an invalid search warrant issued by a court and relying on settled precedent that, at the time of the search, held such warrantless searches to be lawful.[10] *Davis*, 598 F.3d at 1266.

We therefore hold that the district court erred in granting Buford's motion to suppress. A police officer who reasonably relies on settled circuit precedent that authorizes the search of a vehicle acts in objective good faith. That remains true even if a higher court later overrules the settled interpretation of the law and finds a violation. The question then becomes a remedial one: Should the evidence be suppressed? Under the reasoning of the Supreme Court's decisions, the answer is no. Suppression of the fruits of the search of Buford's vehicle in light of a subsequent change in the law would not serve the purpose of the exclusionary rule, which is "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring*, 129 S. Ct. at 702. Here, the deterrent benefit, if any, against unlawful police conduct, is outweighed by its costs. *Id.* at 700-01. Thus, the judicially-created exclusionary rule does not apply and suppression is not warranted.

## VI.

For these reasons, we reverse the district court's order granting Buford's motion to suppress and remand for further proceedings consistent with this opinion.

---

[10]*Gant* itself underscored the reasonableness of an officer's reliance on settled law, even if that law is later overturned. The Court noted that qualified immunity will shield officers from liability in civil suits challenging unconstitutional vehicle searches conducted before *Gant* because such officers acted in "reasonable reliance" on the then-prevailing and "widely accepted" understanding of *Belton*. 129 S. Ct. at 1722 n.11. That observation directly supports the conclusion that the good-faith exception to the exclusionary rule applies in criminal prosecutions because the qualified immunity test turns on the same standard of reasonableness as the good-faith exception. *See Groh v. Ramirez*, 540 U.S. 551, 565 n.8 (2004) (citing *Malley v. Briggs*, 475 U.S. 335, 344 (1986)); *see also Davis*, 598 F.3d at 1264 n.4.