NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0287n.06

**No. 10-5178**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

**May 03, 2011**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,               )
                                        )
        Petitioner-Appellee,            )
                                        )
v.                                      )   On Appeal from the United States
                                        )   District Court for the Western
FORTRELL LATRAE SAIN,                   )   District of Tennessee
                                        )
        Defendant-Appellant.            )

Before:     KENNEDY, BOGGS, and SUTTON, Circuit Judges.

BOGGS, Circuit Judge. Defendant Fortrell Sain was convicted of being a felon in possession

of a firearm, in violation of 18 U.S.C. § 922(g), and was sentenced to 34 months in prison. Sain now

appeals that conviction, arguing that the evidence against him was the product of an unconstitutional

search of his vehicle and that the district court erroneously denied his motion to suppress. We

affirm.

I

At approximately 1 p.m. on January 15, 2009, Sergeant Shane Beaver, a ten-year veteran of

the Jackson Police Department, received a be-on-the-lookout ("BOLO") radio broadcast. The BOLO

reported that a black male, Fortrell Sain, was wanted regarding a domestic assault that left the victim

with a minor injury. Sain was said to be driving his red 1988 Ford Mustang with a black drop-down

or convertible top,[1] and the BOLO specified the vehicle's license plate number. Significantly, the broadcast also reported that Sain was either armed or possibly armed with a handgun,[2] which was either under the front seat or inside a blue backpack.

Within a few minutes, Beaver spotted the Mustang, which he proceeded to follow to a gas station. Beaver testified that, because the suspect was armed, he thought it best to wait for assistance. Within a minute or two, two backup officers arrived and immediately approached Sain while he was outside the vehicle next to the gas pump, ordered him to the ground, and handcuffed him. Once the officers confirmed his identity, Sain was placed under arrest for the domestic assault.

After arresting Sain, Beaver and another officer proceeded to search the Mustang while the third officer stood by Sain, who had not yet been placed into a police car. Beaver first searched under the driver's seat, but did not find the gun. Beaver testified that the Mustang was a hatchback, and that the hatchback area could be reached from the interior of the vehicle. However, Beaver used

---

[1]Although not addressed by the district court or either party, it appears as though the statement in the BOLO about the Mustang's having a convertible top was inaccurate. The Mustang was described as a hatchback, and 1988 Mustang hatchbacks did not have convertible tops.

[2]It is not clear from Beaver's testimony whether the BOLO report stated that Sain was armed or that he was possibly armed. Beaver twice stated that he knew from the broadcast that Sain was armed. But on cross-examination, Beaver's testimony was more qualified at times. Defense counsel asked Beaver, "Officer Taylor advised in his BOLO that there was possibly going to be a gun in the vehicle . . . correct?", and Beaver responded in the affirmative. Later, defense counsel asked Beaver whether he "would . . . agree that it was a possibility . . . [t]hat's what's in your police report." Beaver responded that he did not understand the question, and defense counsel said, "Well, I'm just stating that in your police report you state that Officer Taylor conveyed to you that there was a gun possibly going to be in the vehicle either under the front seat or in the blue backpack. Do you agree with that?" Beaver responded in the affirmative. Later still, Beaver testified that he knew that Sain was "possibly armed."

Sain's keys to open the hatch from the outside. When asked if he required the keys to access the area beneath the hatch, Beaver testified that "[y]ou can access it through the inside of the car, through the—you know, you can reach through between the back seats or fold the back seats down. But as far as for us, for convenience, I'm not going to crawl in the back seat and try to search that when I can open the back." Inside the hatchback area of the Mustang, Beaver found a blue backpack that contained a handgun, a magazine, and several rounds of ammunition.

On March 16, 2009, a grand jury indicted Sain with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Sain filed a motion to suppress the evidence on August 6, 2009, which the district court denied on October 7, 2009. The district court held that the officers had probable cause to believe that "the Mustang . . . contain[ed] contraband in the form of a firearm," and the search was therefore valid pursuant to the automobile exception to the Fourth Amendment's warrant requirement. *See United States v. Smith*, 510 F.3d 641, 649–50 (6th Cir. 2007). Sain pleaded guilty to the offense on November 16, 2009, expressly reserving the right to appeal the denial of his suppression motion. On February 12, 2010, the district court sentenced Sain to 34 months in prison, and Sain filed a timely notice of appeal.

II

A

When reviewing a denial of a motion to suppress, this court reviews the district court's legal conclusions de novo. *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006). However, the district court's factual findings are reviewed only for clear error, and we consider the evidence in the light most favorable to the government. *Ibid*. Further, this court can affirm a district court's denial

of a motion to suppress if the district court's conclusion can be justified for any reason supported by the record, including reasons not considered by the district court. *United States v. Allen*, 106 F.3d 695, 700 n.4 (6th Cir. 1997).

B

In general, a police officer may search an automobile without a warrant only if the officer has "probable cause to believe that the vehicle contains evidence of a crime." *Smith*, 510 F.3d at 647 (quoting *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998)). This so-called "automobile exception" to the Fourth Amendment's warrant requirement is justified because individuals have a lesser expectation of privacy in their vehicles than in their homes. *Ibid.* (citing *California v. Carney*, 471 U.S. 386, 391 (1985)).

In addition, a police officer may in certain circumstances conduct a warrantless search of a vehicle incident to an arrest even without probable cause to believe that the vehicle contains evidence of a crime. Searches of an automobile conducted pursuant to an arrest are controlled by the recent Supreme Court decision in *Arizona v. Gant*, which holds that such a search violates the Fourth Amendment unless "the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 129 S. Ct. 1710, 1723 (2009). Prior to *Gant*, police officers had much greater authority to search an automobile pursuant to an arrest, as laid out in *New York v. Belton*, 453 U.S. 454 (1981). This circuit's "consistent reading of *Belton* [was] that, once a police officer ha[d] effected a valid arrest, that officer can search the area that is *or was* within the arrestee's control." *United States v. Buford*, 632 F.3d 264, 269 (6th Cir. 2011) (quoting *United States v. White*, 871 F.2d 41, 44 (6th Cir.

1989)).  Significantly, under this circuit's *Belton* jurisprudence, the area that could be searched incident to arrest included the cargo area of a wagon or hatchback-style vehicle, which, for purposes of *Belton*, is within the passenger compartment of the vehicle because it is reachable without exiting the vehicle.  *United States v. Pino*, 855 F.2d 357, 364 (6th Cir. 1988) (holding that the passenger compartment for purposes of *Belton* "is properly viewed as including all space reachable without exiting the vehicle, excluding areas that would require dismantling the vehicle" (internal quotation marks and citation omitted)).

Recently, this circuit held that, even where a search of an automobile conducted incident to an arrest is unconstitutional under *Gant*, suppression of the evidence seized is not warranted so long as, at the time of search, the "police officer . . . reasonably relie[d] on settled circuit precedent that authorizes the search of [the] vehicle." *Buford*, 632 F.3d at 276–77.  Under such circumstances, the good-faith exception to the exclusionary rule applies.  *Ibid*.; *see Herring v. United States*, 555 U.S. 135, 129 S. Ct. 695, 702 (2009) ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it . . . .").

C

We affirm the district court's denial of Sain's motion to suppress on the ground that the search, which was conducted more than three months prior to the Supreme Court's decision in *Gant*, was valid under *Belton* and this circuit's pre-*Gant* caselaw and, accordingly, the good-faith exception to suppression applies.  *Buford*, 632 F.3d at 276–77; *Pino*, 855 F.2d at 364.  The district court found, and the record supports, that Beaver found the handgun in the hatchback area of the Mustang, which

was reachable from inside the vehicle.[3]  Sain suggests that the district court's finding is clearly erroneous because Beaver did not, in fact, access the hatchback from inside the vehicle, but rather used Sain's keys to open the trunk.  But the question is not how Beaver *chose* to access the area, but rather how an occupant of the vehicle *could have* accessed it.  *See Pino*, 855 F.2d at 364.  Here, Beaver testified that he could have accessed the hatchback area from inside the vehicle, but as a matter of convenience, he chose to open the hatch from outside.  The district court credited that testimony, and its decision to do so was not clearly erroneous in the absence of any evidence to the contrary.  *United States v. Akram*, 165 F.3d 452, 456 (6th Cir. 1999) ("In the absence of any contradictory testimony, we will abide by the district court's findings of fact.").

Sain also argues that Beaver did not rely on established precedent in good faith because he was unaware of the relevant precedent.  This argument has no merit.  First, Sain relies only on Beaver's testimony that he believed he could search the trunk of the Mustang incident to arrest.  As explained *supra*, the trunk of the Mustang hatchback is part of the passenger compartment for purposes of *Belton*, so considering the type of vehicle at issue, Beaver's statement is not problematic.  Second, and more significantly, the proper inquiry is of *objective*—not subjective—good faith.  *Buford*, 632 F.3d at 267; *see United States v. Hython*, 443 F.3d 480, 487–88 (6th Cir. 2006).

---

[3]Although the district court used the term "trunk," it noted that the vehicle was a hatchback and that the area was accessible from inside the vehicle.  Although *Belton* specifically carved out a vehicle's trunk from its rule, 453 U.S. at 461 n.4, the relevant inquiry is not what label the district court used to describe the area, but whether the area was accessible from inside the vehicle, in which case, for purposes of *Belton*, it is not a trunk at all, but rather a part of the passenger compartment. *Pino*, 855 F.2d at 364.

Accordingly, Beaver's search of the Mustang incident to Sain's arrest was valid under this circuit's clearly established pre-*Gant* caselaw, and pursuant to *Buford*, the good-faith exception applies.

III

For the foregoing reasons, we AFFIRM the district court's denial of Sain's motion to suppress.