NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0848n.06

No. 11-5753

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 06, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| TROY MASTER, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |

**Before:  COLE and DONALD, Circuit Judges; SARGUS,* District Judge.**


Bernice B. DONALD, Circuit Judge.  Defendant Troy Master appeals the denial of his

motion to suppress evidence found at his home during the execution of a search warrant.  Master

pleaded guilty to being a felon in possession of a firearm but preserved his right to appeal the denial

of his motion to suppress.  When Master originally appealed the denial of his motion to suppress,

we remanded for re-examination of the facts by the district court and application of the *Herring*

balancing test.  For the following reasons, we now **AFFIRM**.

---

*Hon. Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio,
sitting by designation.

## I. FACTS AND PROCEDURAL HISTORY[1]

On January 14, 2007, Investigator George Dyer of the Franklin County, Tennessee, Sheriff's Department submitted an affidavit in support of a search warrant for Master's residence. The affidavit listed Master's address as "9356 AEDC Road, Winchester Franklin County, Tennessee", and included directions to the single-wide trailer where Master lived. The record shows that Master's residence is actually located in Coffee County, not Franklin County.

The search warrant was signed on January 14, 2007 by Judge Thomas C. Faris, a general sessions and juvenile court judge in Franklin County, Tennessee. As a general sessions judge in Franklin County, state law provided Judge Faris with the authority to sign warrants only for property in Franklin County. Less than three months before the search, on October 16, 2006, officers from the Franklin County Sheriff's Department had responded to a disturbance call at Master's residence. Master was arrested for domestic violence. The charge was dismissed by Judge Faris less than a month before the search warrant in this case was issued because the proper venue was Coffee County, not Franklin County.

On January 15, 2007, Franklin County Sheriff's officers executed the search warrant in this case. During the search, Master informed the officers that he had a shotgun in the bedroom. The officers subsequently arrested Master for being a felon in possession of a firearm.

---

[1]The essential facts have not changed since the case was originally before us. For that reason, we adopt the facts as laid out in *United States v. Master*, 614 F.3d 236, 237-38 (6th Cir. 2010).

Master filed a motion to suppress the statements and evidence uncovered from the search. At the suppression hearing, Investigator Dyer testified that he had believed Master lived in Franklin County because Dyer's supervisor informed him that Master had registered as a sex offender in Franklin County using his current street address. Dyer also claimed he had spoken with a 9-1-1 operator at the Franklin County Sheriff's Department who informed him that she would dispatch a Franklin County Sheriff's Department vehicle if a call came from that address. Master presented testimony from an investigator, Bill Dipillo, who testified that the Property Assessor for Franklin County, as well as the 9-1-1 dispatchers for Franklin and Coffee County, all stated Master's residence was in Coffee County. Dipillo also testified about the previous dismissal of the domestic violence charges by Judge Faris when the charges had been brought incorrectly in Franklin County.

The motion to suppress was denied on June 4, 2008. Master entered a conditional guilty plea on August 11, 2008. On November 10, 2008, Master was sentenced to 57 months imprisonment. He subsequently appealed the denial of his motion to suppress. This court remanded the case back to the district court to re-examine the facts and perform a *Herring* balancing test. After applying the *Herring* test, the district court, again, denied the motion to suppress. Master appeals that order.

## II. ANALYSIS

When reviewing a district court's decision on a motion to suppress, we review its factual findings for clear error and its legal conclusions de novo. *UnitedStates v. Galaviz*, 645 F.3d 347, 352 (6th Cir. 2011). When a district court denies a motion to suppress, we review the evidence in the

light most likely to support the district court's decision. *United States v. Adams*, 583 F.3d 457, 463

(6th Cir. 2009).

In his brief, Master argues that under *United States v. Scott*, 260 F.3d 512 (6th Cir. 2001),

the warrant to search his home was void *ab initio* and therefore both the *Leon* good faith exception

and the *Herring* balancing test are inapplicable. In *Scott,* the court held that when a warrant is signed

by someone who lacks the legal authority to issue a warrant, the warrant is void from the beginning,

or *ab initio*. 260 F.3d at 515. The court also found that because the core issue focused on the judge's

authority as opposed to the actions of an officer, *Leon* did not apply because *Leon* "presupposed that

the warrant was issued by a magistrate or judge clothed in the proper legal authority." *Id.* Although

this is a tenable argument, it is not at issue here because when we remanded this case back to the

district court we addressed the findings in *Scott* and directed the district court to perform a *Herring*

balancing test. When this case was originally before us we held:

> [B]ased on *Scott,* it could be argued that because Judge Faris lacked legal authority
> to issue the relevant warrant, the good faith exception is foreclosed. We do not
> believe, however, that such a broad interpretation of *Scott* continues to be viable in
> light of more recent Supreme Court cases. . .In *Scott,* the Court reasoned that where,
> as here, the magistrate lacks authority to issue the contested warrant, the supposed
> "good faith" of the officer who executes the warrant can do nothing to confer legal
> status upon the deficient warrant. This reasoning, while certainly a permissive
> reading of *Leon*, is no longer clearly consistent with current Supreme Court doctrine,
> as the Court has made clear in *Herring*. . .While it appears at first blush that
> suppression might be inappropriate in this case, we will remand the case to the
> district court for the purpose of re-examining the facts and balancing the interests as
> required by *Herring*.

*Master*, 614 F.3d at 241-243 (citations omitted).

Because this issue has previously been presented to this court and ruled upon, we find it unnecessary to further address it. We are not inclined to alter our original holding and therefore find that, in accordance with our earlier opinion, the district court was correct in applying *Herring.*

The Supreme Court has stated that the suppression of evidence "is not an automatic consequence of a Fourth Amendment violation." *United States v. Burford*, 632 F.3d 264, 270 (6th Cir. 2011) (quoting *Herring v. United States*, 555 U.S. 135, 129 S.Ct. 695, 698 (2009)). Evidence should be suppressed "only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Herring* 555 U.S. at 143 (quoting *Illinois v. Krull*, 480 U.S. 340, 348-49 (1987)) (internal quotation marks omitted). The crucial finding needed to suppress evidence is whether police misconduct is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 144. The *Herring* balancing test requires that in order for a court to suppress evidence following the finding of a Fourth Amendment violation, the benefits of deterrence must outweigh the costs.

Master maintains that Officer Dyer knew that his residence was located in Coffee County rather than Franklin County and that because of the officer's deliberate conduct, the evidence should be suppressed. Master points to the fact that the judge who issued the warrant had, just 24 days earlier, signed an order of dismissal in a case against him indicating that the appropriate venue for

the action was Coffee County. Master avers that because an officer from the Franklin County Sheriff's Department was present at the proceedings, this knowledge of Master's residence should be imputed to all officers within the department.

The idea that the entire department should be held accountable for all information received by each individual officer as it relates to a particular case has no basis in the law. Under the collective knowledge theory, "the knowledge of one law enforcement officer can be imputed to another if the other is working on the same investigation." *United States v. Yoon,* 398 F.3d 802, 812 (6th Cir. 2005).[2] Here, Officer Dyer had no connection to the Defendant's previous arrest. The proceedings took place one month prior to the incident at hand, and there is no indication that the information was relayed to Officer Dyer or should have been. Officer Dyer was not present at the proceedings, nor was he the arresting officer in that case. Officer Dyer, therefore, could not be expected to have prior knowledge that Master's trailer was not located in Franklin county based on the dismissal of the domestic violence charge against him.

Master further contends that the owners of the property on which he resided were involved in several disputes with 9-1-1 dispatchers, the school system, a building inspector, and a Sheriff's Department concerning the actual location of the property and that Franklin County Sheriff's Department should, therefore, have been aware that the property was located in Coffee County. This

---

[2] Master did not specifically argue that knowledge of his address should be imputed to Officer Dyer based upon the collective knowledge theory. He has made no specific legal argument to support his claim, but the facts as he laid them out suggest that this is the basis for his argument.

argument is unpersuasive.  The fact that there have been several disputes about the actual location of the property shows that the county boundaries were not clear and that Officer Dyer made a reasonable mistake in his belief that the property was located in Franklin County.  Furthermore, the owners of the lot have, on several occasions, received services from the Franklin County Sheriff's Department.  Based upon this information, Officer Dyer's actions cannot be said to be so culpable that suppression is warranted.

Finally, Master submits that Officer Dyer made several mistakes when attempting to determine the correct county for Master's address and that these mistakes could be seen as deliberate, reckless, or grossly negligent.  Master lists a litany of mistakes made by Officer Dyer in trying to get the warrant.  The fact that Master categorizes Dyer's actions as "mistakes" is telling.  An error in judgment or a mistake that is not systematic does not amount to being deliberate, reckless, or grossly negligent.  *See United States v. Godfrey*, 427 F.App'x. 409, 412-13 (6th Cir. 2011).  All of Master's arguments are without merit and the ones as they relate to Officer Dyer's actual knowledge of Master's county have already been addressed. However, we will briefly discuss the ones not previously addressed.

Master asserts that Officer Dyer's methods for determining his correct county were not diligent enough.  Officer Dyer not only used a local 9-1-1 map to determine the correct county but also spoke with another law enforcement officer who informed him that as a registered sex offender, Master listed the county of his residence as Franklin County.  Master's contention that Officer Dyer should have driven past the residence to determine the county is illogical because simply seeing the

residence would not tell him in what county it was located.  Furthermore, the idea that Officer Dyer should have contacted the property and tax assessor for each county is simply unreasonable.  Police work is often times fast paced and requires officers to do a great deal of work in a short period of time.  It would put an undue burden on the police department if officers had to go to a public records office, which more than likely is not open 24 hours, every time they needed to find an address for a warrant.

In Master's final argument, he states that Officer Dyer mislabeled the 9-1-1 map that he presented to Judge Faris when he applied for the warrant.  Dyer placed a pink dot on the map indicating where he believed the house was located.  The dot, however, was placed on the wrong side of the street.  Although Dyer mislabeled the map, he attached accurate driving instructions to the warrant application.  This is not the kind of mistake that would warrant suppressing evidence.

Master has set forth many arguments as to why his motion to suppress should be granted, but he has not established that Officer Dyer had knowledge of material facts that would make the search unconstitutional.  Officer Dyer's actions were neither deliberate nor sufficiently culpable that suppression would be warranted in order to deter similar behavior in the future.  Under the *Herring* balancing test the benefits of deterrence, if any, do not outweigh the costs.  Therefore, suppression is not appropriate.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order denying Defendant's

motion to suppress.