RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0384p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

    *v.*                                              No. 09-3264

ANDRE JOHNSON,
                    *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 08-00061-001—Sandra S. Beckwith, District Judge.

Argued: December 9, 2010

Decided and Filed: December 16, 2010

Before: MARTIN and SILER, Circuit Judges; BELL, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant. Christopher K. Barnes, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant. Christopher K. Barnes, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Defendant-appellant Andre Johnson filed a pre-trial motion to suppress evidence and statements from a traffic stop, which

_____

[*] The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

was denied by the district court. He was convicted of being a felon in possession of a firearm and possession of powder cocaine. Now, he appeals the district court's denial of his suppression motion, his convictions, and his sentence. For the following reasons, we **AFFIRM**.

## I. BACKGROUND

On the afternoon of April 2, 2008, undercover Officer Jason Bolte of the Cincinnati Police Department was conducting surveillance in an unmarked car in a high-crime area on the west side of Cincinnati. He observed a female driver and two male passengers park behind his unmarked car in a gold Toyota Camry. He further observed the passenger in the front of the car—a black man wearing a gray hooded sweatshirt and a black baseball cap—exit and give a man money in exchange for two or three pieces of a small, white substance before returning to the Camry and driving away.

Officer Bolte radioed his dispatcher with instructions for other officers to pull over the Camry on suspicion that the front passenger had just purchased drugs. Officer Chris Vogelpohl pulled over the Camry shortly thereafter and asked all three occupants for identification. Johnson, a black man not wearing a sweatshirt, was the front passenger. Officer Vogelpohl thought Johnson appeared nervous and asked him to step out of the car. He asked Johnson to submit to a pat-down, but Johnson attempted to flee on foot. Officer Vogelpohl tased Johnson twice causing him to fall to the ground and reveal a gun in his waistband. Officer Vogelpohl yelled to Officer Greg Ventre, another officer who had arrived on the scene, that Johnson had a weapon. Officer Ventre handcuffed the driver and the other passenger of the Camry. After Johnson was placed under arrest for unlawful possession of a firearm, Officer Ventre searched the front passenger area of the Camry where Johnson had been sitting and found a gray sweatshirt like the one seen earlier by Officer Bolte. Inside the pockets were a bag containing six or seven pieces of crack cocaine and another bag containing powder cocaine. Subsequently, Officer Bolte identified Johnson as the man from the Camry he saw buying the white substance.

A grand jury in United States District Court for the Southern District of Ohio indicted Johnson on June 4 with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), one count of using a firearm in connection with drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i), one count of possession of crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii), and one count of possession of powder cocaine in violation of 21 U.S.C. § 844(a).

Johnson filed a motion to suppress evidence obtained from the traffic stop, which was denied by the district court.

During trial, the court had a discussion outside the presence of the jury with Johnson, his attorney, and the government.  First, they discussed whether Johnson's attorney had incorrectly explained to him the Sentencing Guidelines range for a plea deal offered by the government versus the potential range for the charges if he proceeded to trial and was convicted.  Johnson alleged that his attorney had given him incorrect information, and that he would not have proceeded to trial if he had known what the correct ranges were.  To this, the court responded, "Mr. Johnson, you're the person in this room with felony convictions and that makes your credibility suspect.  I know [your attorney] to be a capable, talented, honest attorney whose intentions are always to represent his client to the best of his ability."  The court added that this issue could be properly raised as a collateral appeal if Johnson was convicted, but that the trial would proceed instead of addressing the issue then.

Second, they discussed whether Johnson would testify in his own defense. When Johnson's attorney informed the court that Johnson would testify, the court asked the attorney whether he and Johnson had discussed the potential consequences. Specifically, the court discussed how testifying would allow the prosecution to introduce evidence of Johnson's past crimes and how the prosecution's stipulation that it would not introduce evidence regarding the nature of Johnson's past crimes would be nullified.  In response, Johnson indicated that he would waive his right to testify, but the court instructed

Johnson to discuss the matter with his attorney during an immediate break in the proceedings.  In the end, Johnson did not testify.

A jury convicted Johnson on October 22 on the counts of being a felon in possession and possession of powder cocaine, but acquitted him on the other two counts. The district court sentenced him on March 10, 2009.

## II.  DISCUSSION

On appeal, Johnson claims that: (1) comments made by the district court violated his right to testify in his defense; (2) the district court erred in denying his suppression motion; (3) the district court abused its discretion by failing to address his ineffective assistance of counsel claim during trial; (4) the district court erred in denying him a two-level adjustment to his total offense level for accepting responsibility; and (5) the district court improperly sentenced him because it did not know that it had discretion to vary downward from the Guidelines' range for crack cocaine offenses and the Guidelines' base offense level for felons in possession of a firearm.

### A.     **Whether the District Court Chilled Johnson's Right to Testify.**

We review de novo allegations of constitutional violations at the trial stage. *United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000).

"The right of a defendant to testify at trial is a constitutional right of fundamental dimension and is subject only to a knowing and voluntary waiver by the defendant." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 52, 53 n.10 (1987)).  A district court does not chill a defendant's right to testify by warning him about the consequences of perjury and how his testimony may affect sentencing. *See United States v. Stuart*, 507 F.3d 391, 398 (6th Cir. 2007); *see also Webber*, 208 F.3d at 552-53.

Here, Johnson claims that he was dissuaded from testifying when the court remarked how his status as a felon made him less credible than his attorney in the eyes of the court, as well as when the court alerted him that if he testified, the government could question him about past convictions that might have detracted from his credibility

in the eyes of the jury. However, the majority of the district court's comments to Johnson merely attempted to explain that, should he choose to testify, the jury would be able to learn of his past convictions, which could potentially damage his credibility. The court also pointed out that testifying would nullify a stipulation agreed upon by the parties that the nature of his prior convictions would not be revealed to the jury, the effect of which could be damning. Furthermore, as in *Webber*, the district court ultimately informed Johnson that the decision to testify was his to make with his attorney, and gave him additional time to confer with his attorney. While all this may have contributed to Johnson's decision not to testify, it was information that he should have taken into account in making his decision. What is more, the additional time given to Johnson to discuss his decision during a recess enabled him to seek advice from his attorney.

It might have been unnecessary for the district court to admonish Johnson that his felonious past made him less credible than his attorney, but a comment like that one does not rise to the level of unconstitutional judicial misconduct in the context of the Sixth Amendment. *Cf. United States v. Blood*, 435 F.3d 612, 629 (6th Cir. 2006) (finding that, in the context of judicial bias, "[a]lthough the judge's inquiries exhibited sarcasm and could have been phrased more diplomatically, they primarily evidence the judge's effort to seek additional information from witnesses and not any prejudice or bias against [defendant]").

Accordingly, the district court's comments did not chill Johnson's constitutional right to testify.

**B.      Whether the District Court Wrongly Denied Johnson's Suppression Motion.**

"'When reviewing decisions on motions to suppress, this Court will uphold the factual findings of the district court unless clearly erroneous, while legal conclusions are reviewed de novo.'" *United States v. West*, 520 F.3d 604, 609 (6th Cir. 2008) (quoting *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996)). "Evidence should be viewed in the light most favorable to the district court's conclusion." *United States v.*

*Gooch*, 499 F.3d 596, 600 (6th Cir. 2007) (citing *United States v. Jones*, 159 F.3d 969, 973 (6th Cir. 1998)).

We have held that *Terry v. Ohio*, 392 U.S. 1 (1968), "'permits a police officer briefly to detain a person or property for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur.'" *United States v. Davis*, 514 F.3d 596, 607-08 (6th Cir. 2008) (quoting *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005)). This reasonable suspicion must be judged by courts based on the "'totality of the circumstances' of each case." *United States v. Paulette*, 457 F.3d 601, 606 (6th Cir. 2006) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Officers may "'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them.'" *Id.* (quoting *Arvizu*, 534 U.S. at 273). Furthermore, a police officer may have reasonable suspicion based upon information from other officers. *United States v. Barnes*, 910 F.2d 1342, 1345 (6th Cir. 1990) (holding that an agent with the Bureau of Alcohol, Tobacco, and Firearms had reasonable suspicion to make a valid *Terry* stop of the defendant because other agents and police had provided him information about the defendant's criminal activity). In *Paulette*, we held that a search was supported by reasonable suspicion when police had knowledge of drug crimes and observed the defendant in a hand-to-hand transaction with a man in an area known for drug activity, and the defendant attempted to evade police. *Paulette*, 457 F.3d at 602. The search for weapons was also valid because of "the frequency with which drug dealers arm themselves." *Id.* (citing *Arvizu*, 534 U.S. at 273).

Johnson was seen engaging in a hand-to-hand transaction with a man in a high-crime area known for drug activity. While Johnson did not evade police before being stopped, there was additional evidence that Officer Bolte actually saw cash and pieces of a small, off-white substance being exchanged. Therefore, based upon *Paulette* and the experience of Officer Bolte as a trained, undercover police officer, he had reasonable suspicion to believe that Johnson had engaged in criminal activity sufficient to warrant a *Terry* stop. Furthermore, if Officer Bolte had reasonable suspicion, Officer Vogelpohl

did as well because Officer Bolte relayed sufficient information to him. *Cf. Barnes*, 910 F.2d at 1345.

Additionally, once Johnson had been arrested for possession of a firearm and secured outside of the car, police safety was no longer a valid reason to search the Camry, but the search of the passenger area where Johnson had been sitting was still permissible because "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Arizona v. Gant*, 129 S. Ct. 1710, 1719 (2009) (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)). Indeed, in some cases, "the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Id.* Police could have reasonably believed that ammunition or additional firearms were in the car or in containers in the car, especially in the passenger area searched by police that was formerly occupied by Johnson.

Accordingly, the district court did not err in denying Johnson's suppression motion.

**C.     Whether the District Court Should Have Considered Johnson's Mid-Trial Ineffective Assistance of Counsel Claim.**

Johnson claims that his trial counsel gave him incorrect advice regarding his potential sentence when considering a plea agreement, and that he would have accepted the agreement had he been given correct advice. Furthermore, he claims that he brought this issue before the district court during trial and the court erred by not considering his claim at that time. In order for a defendant to prevail on an ineffective assistance of counsel claim, there must be a reasonable probability that the outcome of the proceedings would have been different but for counsel's deficient performance. *Avery v. Prelesnik*, 548 F.3d 434, 437 (6th Cir. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). This analysis requires the existence of two outcomes—one actual and one alternate. However, Johnson claims that the district court erred by not considering his claim during trial when the court could not have known the outcome of

the trial. Even if we assume that Johnson's counsel was in fact deficient, the court did not know the actual outcome of the proceedings and could not rule in favor of Johnson until one existed. Furthermore, Johnson's reliance upon the non-binding decision of the Second Circuit in *United States v. Brown*, 623 F.3d 104 (2d Cir. 2010), is misplaced because the ineffective assistance claim in that case was brought to the district court's attention after the defendant had been convicted.

While we decline to extend our discussion to all situations where a defendant raises a mid-trial claim of ineffective assistance of counsel, or the situation in *Brown* where an ineffective assistance claim is raised after conviction but before sentencing, the district court here did not err in refraining from deciding Johnson's claim. Because the court did not know the outcome of the trial at the time the claim was made, it could not have possibly decided that the outcome of Johnson's case would have been different but for any alleged deficiency of counsel.

**D.     Whether the Court Should Have Reduced Johnson's Total Offense Level for Accepting Responsibility.**

Johnson specifically claims that he did accept responsibility for possessing a firearm, and that he only challenged at trial whether he used the firearm in furtherance of drug trafficking. If the facts are uncontested, the Sixth Circuit affords deference to a district court's decision regarding a reduction for acceptance of responsibility and reviews the decision for clear error. *United States v. Brown*, 367 F.3d 549, 556 (6th Cir. 2004) (citing *United States v. Webb*, 335 F.3d 534, 537-38 (6th Cir. 2003)).

The offense level reduction for acceptance of responsibility under section 3E1.1(a) of the United States Sentencing Guidelines "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1(a) cmt. n.2. The sentencing court's decision whether to apply the reduction "will be based primarily upon pre-trial statements and conduct." *Id.*

Here, it is uncontested that Johnson did not admit to possessing the gun until the closing argument of his trial. Up to that point, he had put the government to its burden

of proving that he possessed the gun.  The district court decided that Johnson's revelation at closing arguments was too late to deserve a reduction under section 3E1.1(a).  Indeed, granting a reduction based solely upon a closing argument would be inconsistent with the Guidelines, which direct courts to rely mainly upon pre-trial statements and conduct in making this decision.  *Id.* at cmt. n.2.

Accordingly, the district court did not commit clear error in declining to award Johnson a two-level reduction for accepting responsibility.

**E.     Whether the District Court Was Aware of Its Ability to Vary from the Guidelines.**

At the sentencing hearing, the district court gave both parties an opportunity to object to any part of the sentence.  Johnson objected to "everything."  Because Johnson objected broadly to all aspects of his sentence without making any particular objections, his claims on appeal regarding procedural sentencing errors are reviewed for plain error. *United States v. Simmons*, 587 F.3d 348, 358 (6th Cir. 2009) (holding that plain error review is required "where a party answers the *Bostic* question in the affirmative, but at such a high degree of generality that the district court has no opportunity to correct its purported error and the court of appeals has been deprived of a more detailed record to review").  A finding of plain error requires a defendant "to show (1) error (2) that 'was obvious or clear,' (3) that 'affected defendant's substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).  The bar for plain error is extremely high and overcome "'[o]nly in exceptional circumstances'" when "'the error is so plain that the trial judge . . . was derelict in countenancing it.'" *Id.* (quoting *Gardiner*, 463 F.3d at 459).

Regarding Johnson's crack cocaine claim, the district court did not commit plain error.  In fact, that Johnson even makes this claim on appeal is bizarre because he was not convicted of, or sentenced for, a crack cocaine offense.  Indeed, he was acquitted of that charge and the only drug charge of which he was convicted was possession of powder cocaine.

Turning to Johnson's claim regarding his base offense level as a felon in possession of a firearm, he has not cleared the extremely high hurdle of plain error review.   The district court held a lengthy sentencing hearing, was familiar with Johnson's background, discussed the need to deter Johnson from any further criminal behavior, and talked about the seriousness of Johnson's criminal history.  Therefore, there is no obvious and clear error in Johnson's sentence.

Accordingly, the district court did not commit plain error when sentencing Johnson.

### III.  CONCLUSION

Based on the foregoing reasons, we **AFFIRM** the holdings of the district court.