**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0584n.06

**No. 08-4552**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Aug 19, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| THOMAS GALAN, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | **OPINION** |
| | ) | |

Before: GUY, COOK, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Thomas Galan appeals his drug conspiracy conviction as well as the concurrent life sentences without possibility of release that he received on two convictions for murder with a firearm committed in the course of the drug conspiracy. Galan does not challenge his conviction on the murder charges. We **AFFIRM** the drug conspiracy conviction, but we **VACATE** the life sentences imposed on counts 2 and 3 and **REMAND** the case to the district court for re-sentencing on those counts.

## I. FACTS AND PROCEDURAL HISTORY

From the early 1990's to at least 2003, Galan operated as a mid-level drug dealer who distributed cocaine and marijuana in Fostoria, Ohio. His sources of supply were the Luna brothers and the Flores brothers.

Bobbi Breitegam, a long-time resident of Fostoria, testified at trial that she and her late husband purchased gram quantities of cocaine and marijuana from Galan between 1990 and 1992. Between 1992 and 1996, Breitegam was present on more than ten occasions when Galan sold ounce quantities of illegal drugs for profit at two bars in Fostoria. During the transactions, the Luna brothers brought the drugs to the bars and supplied them to Galan, who in turn sold them to purchasers. Breitegam described the individuals who distributed drugs in Fostoria in 1996 as very close-knit with common sources of supply.

Eric Lopez testified he purchased 10 to 20 pounds of marijuana from Galan in Fostoria on five to ten occasions in 1995 and 1996. During those same years, Lopez accompanied Galan when he picked up large quantities of drugs from his suppliers in Fostoria, Toledo, and Findlay, Ohio. Dion Tey testified he purchased quarter- to half-pound quantities of marijuana from Galan between five and ten times in 1996. When Tey accumulated a debt for drugs Galan had fronted to him, Tey paid off the debt by giving Galan a 9 millimeter Ruger pistol and two magazines. By Fall 1996, Galan owed a significant amount of money to the Flores brothers for illegal drugs they had fronted to him. Rather than pay the debt, Galan used the Ruger pistol he obtained from Tey to murder both of the Flores brothers on December 7, 1996.

While the homicides remained unsolved, Galan continued to sell drugs. Between 2000 and 2003, Eric Lopez purchased small quantities of cocaine for personal use from Galan. He also distributed large quantities of drugs for the Luna brothers. On one occasion, Galan asked to buy drugs from Lopez, but Lopez refused to sell due to Galan's reputation for not paying for drugs he purchased. Travis Williamson, another Fostoria resident who was involved in drug distribution with

Eddie Fetro in Fostoria in 1996, testified he purchased one or two pounds of marijuana from Galan on at least two occasions in 2002 or 2003. Williamson also purchased marijuana directly from the Luna brothers between 2003 and 2006.

The murders of the Flores brothers were finally solved in 2005 when the Ruger pistol was located in a creek bed near the murder scene. Ballistics tests confirmed the weapon was used to commit the murders, and other evidence developed by investigators linked the weapon to Galan.

In March 2006, Galan was indicted on a charge of drug conspiracy in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) & (b)(1)(C) & 846. The following month, the grand jury returned a three-count superseding indictment which expanded the drug conspiracy allegations in count 1 and added two murder counts for Galan's killing of the Flores brothers in violation of 18 U.S.C. § 924(j)(1) & § 924(c)(1); 18 U.S.C. § 1111, and 21 U.S.C. § 841(a)(1) & § 846. The superseding indictment also contained a Notice of Special Findings to support eligibility for the death penalty, and in November 2006, the government filed a notice of intent to seek the death penalty. In January 2007, the grand jury returned a second superseding indictment amending the Notice of Special Findings.

In November 2007, the trial jury returned its verdict of guilty on all three counts. Following the death penalty phase in December 2007, the jury returned its verdict of life imprisonment without possibility of release on counts 2 and 3. The district court subsequently imposed the recommended life sentences on the two murder counts and 480 months of imprisonment on the drug conspiracy count, all sentences to run concurrently. This timely appeal followed.

## II. DISCUSSION

**A. Lack of an instruction on the statute of limitations**

Galan contends the district court committed reversible error when it did not instruct the jury concerning the effect of the five-year statute of limitations applicable to the drug conspiracy charge. Galan did not object at trial to the lack of an instruction on the statute of limitations. Accordingly, we review this issue under the plain error standard. Galan must show: (1) an error, (2) that was clear or obvious, (3) that affected his substantial rights, and (4) that affected the fairness, integrity or public reputation of the judicial proceedings. *See United States v. Johnson*, 627 F.3d 578, 585 (6th Cir. 2010). He has not met this burden.

A five-year statute of limitations applies to the crime of conspiracy. 18 U.S.C. § 3282(a). "Once an indictment is brought, the statute of limitations does not further run as to the charges in that indictment." *United States v. Smith*, 197 F.3d 225, 227 (6th Cir. 1999). In this case, the government was required to prove that Galan participated in the charged drug conspiracy within five years immediately preceding his indictment, that is, between 2001 and 2006. *See United States v. Brown*, 332 F.3d 363, 373 (6th Cir. 2003); *United States v. Mayes*, 512 F.2d 637, 642 (6th Cir. 1975) ("where a conspiracy contemplates a continuity of purpose and continued performance of acts, it is presumed to exist until there has been an affirmative showing that it has terminated").[1]

Relying on *United States v. Swafford*, 512 F.3d 833 (6th Cir. 2008), Galan asserts the government proved multiple conspiracies, some of which operated outside the limitations period and

---

[1]The presumption of continuity can be "extinguished by the affirmative defense of withdrawal" from the conspiracy, *Brown*, 332 F.3d at 374, but Galan expressly disclaims any suggestion that he withdrew from the conspiracy. (Appellant's Reply Br. at 2.)

ended with the deaths of the Flores brothers, and other conspiracies which operated during the limitations period involving different participants. He asks us to find that *Swafford* compels reversal of his conspiracy conviction because, even viewing the evidence in the light most favorable to the jury verdict, the government failed to prove the existence of the charged single conspiracy during the limitations period or that the alleged co-conspirators shared a common goal. *See id.* at 842.

In *Swafford*, however, the government attempted to prove a "wheel conspiracy" or a "hub-and spoke conspiracy," with Swafford acting as the hub, connected to various customers by spokes. *Id.* Ruling that the government failed to prove the existence of a common goal or enterprise, we found a "rimless wheel conspiracy," with Swafford engaging in multiple conspiracies with individual customers. *See id.* (citing *Kotteakos v. United States*, 328 U.S. 750, 755 (1946)). That situation created a fatal variance from the indictment, which charged a single conspiracy. *Id.* at 842-44. Notably, however, we stated in a footnote: "[T]his is not a 'chain conspiracy' where the existence of a single conspiracy is proved by the fact that operators at different levels are connected by a common scheme or enterprise." *Id.* at 842 n.3

Here, the jury heard evidence of a "chain conspiracy." At the top of the chain, the Luna brothers and the Flores brothers supplied large quantities of drugs to a middle-man, Galan, who in turn resold the drugs to users and street-level distributors like Fetro, Lopez, and Williamson at the bottom of the chain. Eric Lopez testified he participated in the charged drug conspiracy with the Luna brothers and Galan in the mid-1990's before Lopez went to prison. Upon Lopez's release from prison in 1999, the Luna brothers enticed Lopez to rejoin the conspiracy to sell large quantities of drugs so he could repay a drug debt that he owed to them. In September 2003, Galan was still

involved in the same conspiracy with Lopez and the Luna brothers, selling personal use quantities of cocaine to Lopez and also asking to buy drugs from Lopez, who had started buying pounds of marijuana and kilograms of cocaine directly from the Luna brothers.

Further, Travis Williamson testified he was involved in the charged conspiracy in 1996 when he distributed drugs with Eddie Fetro. Other evidence confirmed that Fetro obtained his drugs from Galan and the Luna brothers, further up the chain. In 2002 or 2003, Williamson continued to buy pounds of marijuana from Galan, and between 2003 and 2006, he purchased marijuana directly from the Lunas. All of this evidence supports the jury's decision to convict Galan of the charged single conspiracy alleged in the indictment.

Other authorities cited by Galan, such as *United States v. Graham*, 484 F.3d 413 (6th Cir. 2007), *United States v. Gibson*, 409 F.3d 325 (6th Cir. 2005), *United States v. Smith*, 320 F.3d 647 (6th Cir. 2003), and Sixth Circuit Pattern Criminal Jury Instruction § 3.04 (2007), are inapposite because they concern proof of an overt act to show a conspiracy charged under 18 U.S.C. § 371. Here, the government charged drug conspiracy under § 846, which does not include the requirement to prove an overt act. *See United States v. Shabani*, 513 U.S. 10, 14 (1994); *United States v. Graham*, 622 F.3d 445, 450 (6th Cir. 2010). But even if an overt act were required, the government proved overt acts of the charged conspiracy occurring in 2002 and 2003.

Neither Galan's substantial rights nor the fairness, integrity or public reputation of the judicial proceedings were affected by the lack of a jury instruction on the statute of limitations. *See Johnson*, 627 F.3d at 585. Therefore, we affirm the drug conspiracy conviction.

**B. Sentencing error**

Galan next contends the district court committed reversible error during the penalty phase

on the murder counts when the court instructed the jurors to choose between the death penalty or life

imprisonment without possibility of release. Instead, he argues, the court should have instructed the

jury to consider three sentencing options: the death penalty, life imprisonment without possibility

of release, or imprisonment for any term of years. Galan did not object below to the district court's

instruction, but the government concedes plain error occurred and we agree. *See Johnson*, 627 F.3d

at 585.

Counts 2 and 3 of the second superseding indictment charged Galan with committing the

murders of the Flores brothers with a firearm during the course of a drug trafficking conspiracy in

violation of 18 U.S.C. § 924(j)(1). At the time of the offense, § 924(j)(1) provided:

> (j) A person who, in the course of a violation of subsection (c) [using or carrying a
> firearm during and in relation to a drug trafficking crime], causes the death of a
> person through the use of a firearm, shall–

> (1) if the killing is a murder (as defined in section 1111), be punished by death or by
> imprisonment for any term of years or for life[.]

Title 18 U.S.C. § 1111(a) defined murder as "the unlawful killing of a human being with malice

aforethought. Every murder perpetrated by . . . any other kind of willful, deliberate, malicious, and

premeditated killing . . . is murder in the first degree." Section 1111(b) provided that "[w]hoever

is guilty of murder in the first degree shall be punished by death or by imprisonment for life[.]"

We have held that § 924(j) incorporates only the definition of murder in § 1111(a), and not

the penalty provision from § 1111(b), thereby preventing "a first-degree murder conviction under

§ 924(j) from becoming a de facto mandatory minimum life sentence." *United States v. Ostrander*, 411 F.3d 684, 687 (6th Cir. 2005). Therefore, in considering the possible penalties under § 924(j)(1), the jury has "the option to permit the judge to sentence [the defendant] to a term of years[.]" *Id.*

In light of *Ostrander,* the error is plain. We grant the parties' request to return the case to the district court for re-sentencing on counts 2 and 3.

### III. CONCLUSION

Accordingly, for the reasons stated, we **AFFIRM** Galan's drug conspiracy conviction. We **VACATE** the concurrent sentences of life imprisonment without possibility of release imposed on counts 2 and 3 and **REMAND** to the district court solely for re-sentencing on counts 2 and 3.