NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0662n.06

Case No. 08-4428

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Sep 09, 2011**

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| MICHAEL RUFF, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: BATCHELDER, Chief Judge; BOGGS and WHITE, Circuit Judges.

ALICE M. BATCHELDER, Chief Judge. In January 2008, a grand jury for the Southern District of Ohio returned a two-count indictment against Defendant-Appellant Michael Ruff, charging him with (1) possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii), and (2) possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). After the district court denied Ruff's motion to suppress the evidence against him, Ruff pled guilty, preserving his right to appeal the denial of his motion to suppress. For the following reasons, we **AFFIRM**.

I.

On November 21, 2007, Cincinnati Police officers Edwards, Radigan, and Grubbs were conducting a narcotics investigation near an area known to law enforcement as a high-crime area with violence and drug trafficking. The officers were wearing plain clothes and tactical patrol vests emblazoned with "CINCINNATI POLICE." The officers had their badges suspended from chains

around their necks. During this investigation, Officer Edwards received information from a known, confidential, and reliable informant that an individual in the area was carrying a firearm and a large amount of crack cocaine. The informant described the individual as a male wearing a green camouflage jacket with a fur-trimmed collar and dark pants.

As the officers surveyed the area, they saw an individual fitting the description provided by the informant, in the company of two other individuals, sitting on the steps of an apartment building. The building was posted with "no trespassing" and "keep off the property" signs. At least some of the individuals were drinking beer. The officers exited their vehicle and split up to investigate, approaching the individuals from both sides of the apartment building.

Officer Edwards initially approached the individuals to determine the purpose for their presence there. Edwards identified himself as a police officer. All three individuals immediately jumped up and fled, throwing the open beer cans, one of which struck Officer Edwards in the shoulder. One of the three was later determined to be the defendant, Michael Ruff.

Officers Edwards and Radigan pursued Ruff, shouting, "Stop! Police! Or I'll tase you." During the pursuit, Ruff pulled a gun from his right front pocket and threw it to the ground. Edwards, about ten feet behind Ruff, deployed his taser right after he saw the gun, and Ruff fell to the ground. Edwards did not know if the taser had taken effect on Ruff, and in fact, it likely had not—Ruff fell because he tripped.

Edwards then placed Ruff in handcuffs and retrieved the gun Ruff had thrown. Officer Radigan had also observed the gun on the ground near Ruff. Ruff was searched, and Officer Edwards recovered crack cocaine and loose revolver ammunition from Ruff's pocket.

A grand jury for the Southern District of Ohio returned a two-count indictment against Ruff, charging him with possession with intent to distribute cocaine base and possession of a firearm during and in relation to a drug trafficking crime. Ruff filed a motion to suppress, which the district court denied. Ruff then pled guilty to both counts of the indictment, preserving his right to appeal the district court's denial of his motion to suppress. Ruff was sentenced to 63 months in prison for the drug crime and 60 months in prison for the gun crime, to be served consecutively. This timely appeal followed.

Ruff argues that his arrest was not supported by probable cause and that he is entitled to resentencing due to the Fair Sentencing Act of 2010. Both arguments fail.

## II.

This court reviews the district court's suppression-hearing factual findings for clear error and its conclusions of law, including the determination of probable cause, *de novo*. *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009). When the district court denies a motion to suppress, the evidence must be considered "in the light most favorable to the government." *United States v. Pearce*, 531 F.3d 374, 379 (6th Cir. 2008).

## A.

Ruff first argues that the initial approach by Officer Edwards, during which he identified himself as a police officer, constitutes an arrest requiring probable cause. He argues that the officers lacked probable cause, and if the initial approach and identification was a *Terry* stop instead of an arrest, that the officers lacked reasonable suspicion. Because the initial approach by the officers was neither an arrest nor a *Terry* stop, Ruff's arguments fail.

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotation marks and citations omitted). "A police officer may make a seizure by a show of authority and without the use of physical force, but *there is no seizure without actual submission*; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned." *Id*. (emphasis added); *see also California v. Hodari D.*, 499 U.S. 621, 626 (1991) (holding that a seizure does not occur unless the subject yields to a show of authority).

Here, the initial approach by the police officers does not even constitute a *Terry* stop—much less an arrest—because no seizure occurred. As soon as the officers identified themselves as police, Ruff fled. No physical force had yet been used, and although a show of authority was used (identifying themselves as police and possibly saying "stop"), Ruff did not yield to that show of authority. Accordingly, the initial interaction of the police officers with Ruff was not a seizure for Fourth Amendment purposes. *See Brendlin*, 551 U.S. at 254.

Even if we were to consider it a seizure, it was at most a *Terry* stop, in which an officer may "briefly . . . detain a person or property for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur." *See United States v. Johnson*, 627 F.3d 578, 583 (6th Cir. 2010) (internal quotation marks omitted). Here, the officers received a tip from a known, reliable informant that a person whose description matched Ruff's possessed drugs and a gun. Tips from reliable informants can establish reasonable suspicion. *See, e.g.*, *Adams v. Williams*, 407 U.S. 143, 146 (1972) (contemporaneous tip by reliable

informant established reasonable suspicion); *Northrop v. Trippett*, 265 F.3d 372, 381-82 (6th Cir. 2001) ("Typically, courts have found reasonable suspicion for a stop . . . when the police know the tipster to be reliable . . . ."). Therefore, the initial approach by the officers was supported by reasonable suspicion.

**B.**

Alternatively, Ruff argues that his arrest occurred at the point that the taser was deployed, and the officer did not have probable cause at that point because Ruff tossed the gun at approximately the same time the taser was deployed. This argument likewise fails.

Whether the arrest occurred when the taser was deployed or when Ruff was handcuffed is irrelevant. The officer did not deploy the taser until he saw the gun, and by that point, the officer certainly had probable cause. The officer had received a tip from a known, reliable informant stating that an individual wearing distinctive clothing matching that worn by the suspect had a gun and drugs. When the officer approached, the suspect immediately fled and eventually tossed a gun. This court has previously found that a reliable informant's tip combined with some corroborating circumstances establishes probable cause. *United States v. Smith*, 510 F.3d 641, 652-53 (6th Cir. 2007). Here, the officer had both a reliable tip and highly corroborating circumstances at the time that he deployed the taser. Accordingly, he had probable cause to arrest the defendant.

**III.**

In a supplemental brief, Ruff argues that the Fair Sentencing Act of 2010 ("FSA"), signed into law on August 3, 2010, retroactively applies to his case. *See* Pub. L. No. 111-220, 124 Stat. 2372 (amending sentencing provisions in 21 U.S.C. § 841). Among other things, the FSA raises the

amount of crack required to trigger the 5-year mandatory minimum prison term from 5 grams to 28 grams. Ruff's offense occurred on November 21, 2007 and involved 24.63 grams of crack.

Unfortunately for Ruff, the FSA is not retroactive. *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010). Every circuit that has considered the question agrees. *See, e.g.*, *United States v. Diaz*, 627 F.3d 930, 931 (2d Cir. 2010) (per curiam); *United States v. Reevey*, 631 F.3d 110, 111 (3d Cir. 2010); *United States v. Lewis*, 625 F.3d 1224, 1228 (10th Cir. 2010); *United States v. Brewer*, 624 F.3d 900, 909 n.7 (8th Cir. 2010); *United States v. Bell*, 624 F.3d 803, 814 (7th Cir. 2010); *United States v. Gomes*, 621 F.3d 1343, 1346 (11th Cir. 2010).

Ruff's crime occurred before the FSA became law. Therefore, it is of no help to him, and he is not entitled to resentencing.

**IV.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.