File Name:  12a0023n.06

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No.  10-1846

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MICHAEL L. SCHUTTPELZ,

      Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

**FILED**

*Jan 09, 2012*

LEONARD GREEN, Clerk

_____/

Before:      MARTIN, GUY, and GRIFFIN, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge.  Michael L. Schuttpelz challenges his four-count conviction of crossing a state line with intent to engage in a sexual act with a person under age twelve, and distribution, possession, and transportation of child pornography.  Schuttpelz argues that the district court erred in: (1) denying his motion to suppress evidence gained from an allegedly unlawful search of his truck under *Arizona v. Gant*, 129 S. Ct. 1710 (2009); and (2) denying his request for a jury instruction on entrapment, in violation of his Sixth Amendment right to present a defense.  The Government argues, under *Davis v. United States*, 131 S. Ct. 2419 (2011), that the motion to suppress was properly denied because the evidence was obtained in good faith under existing pre-*Gant* law, and that the district court properly declined to include an entrapment

instruction because Schuttpelz failed to produce sufficient evidence of the elements of entrapment.

For the reasons below, we **AFFIRM**.

## I.

In early April 2007, a Federal Bureau of Investigation Special Agent located in Detroit, Michigan, created an undercover online Yahoo! profile to assist in her investigation of child sexual exploitation crimes. The profile was that of a fictitious thirty-year-old woman, Shannon, and included certain subtle suggestions and code words meant to signal an interest in incest and sexual encounters with children.

On April 7, Schuttpelz, an interstate trucker from Nebraska, contacted the agent posing as Shannon online and, almost immediately, inquired about her fictitious three- and six-year-old daughters. The next day Schuttpelz contacted Shannon again and told her he was interested in having sexual intercourse with her six-year-old child and oral sex with her three-year-old child. The following day Schuttpelz again conversed with Shannon online. He continued to express an interest in sexual activities with her children and sent her two photographs of his penis, suggesting that she show the images to her older daughter.

Over the next two months, Schuttpelz engaged in multiple online chats and phone calls with the agent posing as Shannon. In these conversations, he continued to discuss his desire to have sex with Shannon's young daughters. On April 16, Schuttpelz told Shannon in a phone call that he was a registered sex offender due to his previous conviction for molesting a thirteen-year-old girl. From April 21 to May 13, Schuttpelz discussed with Shannon his intention to travel to Michigan, where she and her children lived, to meet them and have sex with her six-year-old daughter. He also

discussed his interest in having a long-term relationship with Shannon. On May 16 and 17, Schuttpelz expressed an interest in also having sex with Shannon's three-year-old daughter. He again sent the agent posing as Shannon images of his penis and asked her to perform sexual acts on her six-year-old daughter while showing the child the pictures.

During the same period in which he was conversing with Shannon, Schuttpelz was also engaged in communications about sexual activities with minors with another undercover law enforcement officer, a detective from the Macomb County, Michigan, Sheriff's Office who was using a fictitious Yahoo! profile to pose as a single mother with a three-year-old son and five-year-old daughter. Schuttpelz first initiated contact with the detective on January 14, 2007. Schuttpelz told the detective he was interested in having sex with her daughter, and sent her a video of child pornography and images of child pornography.

Between May 19 and June 1, Schuttpelz told the federal agent posing as Shannon that he had plans to travel to Michigan for work. He told Shannon that he believed her six-year-old daughter was ready to have sex.

On May 31, Schuttpelz and Shannon made plans to meet the next day. Before Schuttpelz arrived, the agent filed a criminal complaint charging him with online enticement and obtained an arrest warrant. Schuttpelz arrived at the arranged location, a Kmart parking lot in St. Clair Shores, Michigan, on June 1. Federal agents were waiting at the parking lot to arrest Schuttpelz. After he had arrived and parked, Schuttpelz exited his tractor-trailer and stepped away from the vehicle. At that time, the agents placed him under arrest. After arresting Schuttpelz, the agents took him to the Bureau's field office in downtown Detroit, Michigan.

An agent involved in the arrest testified that, "[o]nce [Schuttpelz] was secured, myself and [another agent] proceeded to search the vehicle which was a semi truck in this case." During this search, the Bureau seized, among other items, a cell phone and laptop computer from Schuttpelz's truck.

A forensic search later revealed that the laptop computer contained one-hundred forty-seven images and eleven movies of child pornography. The computer also contained 2,006 online chat files involving over 500 other people with whom Schuttpelz had communicated or attempted to communicate from January to June 2007. The majority of these online conversations were related to the topic of sex with minor children and Schuttpelz's attempts to arrange having sex with minor children.

On August 22, Schuttpelz was charged in a five-count indictment in the District Court for the Eastern District of Michigan. He was charged with: (1) Attempted Enticement/Coercion; (2) Attempted Aggravated Sexual Abuse; (3) Travel With Intent to Engage in Illicit Sexual Conduct; (4) Distribution of Child Pornography; and (5) Possession of Child Pornography. Schuttpelz pled not guilty to all five counts at his initial appearance and arraignment on October 3. In the Government's second superseding indictment, all five charges were realleged and the Government added a sixth count of Transportation of Child Pornography. The district court severed counts 1 and 3 the day before trial.

In September 2009, Schuttpelz moved to suppress evidence, including the cell phone and laptop, seized during what he alleged was an unlawful search of his truck. The district court held

a two-day evidentiary hearing, at the end of which the court denied Schuttpelz's motion to suppress evidence.

The case went to trial in January 2010 on the four remaining counts. Following the close of evidence at trial, Schuttpelz requested a jury instruction on entrapment. The Government opposed the instruction, and the parties engaged in an extensive discussion on the matter in court. The district court then denied Schuttpelz's request for an entrapment instruction, finding that Schuttpelz was "an unwary criminal who readily availed himself with the opportunity to perpetrate the crime . . . . [He] continuously and aggressively went on [the Government's web] site to set up the conduct . . . . [T]here was no repeated government inducement."

At the end of the two-week trial, Schuttpelz was found guilty on all four counts. The district court sentenced Schuttpelz to thirty-eight years' imprisonment.

Schuttpelz timely appeals his conviction, arguing that the district court erred in denying (1) his motion to suppress evidence gained from an allegedly unlawful search of his vehicle, and (2) his request for a jury instruction on entrapment.

## II.

"When reviewing decisions on motions to suppress, this Court will uphold the factual findings of the district court unless clearly erroneous, while legal conclusions are reviewed de novo." *United States v. Johnson*, 627 F.3d 578, 583 (2010) (quoting *United States v. West*, 520 F.3d 604, 609 (6th Cir.2008)) (citation and internal quotation marks omitted). Evidence is to "be viewed in the light most favorable to the district court's conclusion." *United States v. Gooch*, 499 F.3d 596, 600 (6th Cir. 2007) (citing *United States v. Jones*, 159 F.3d 969, 973 (6th Cir.1998)). The appeal

of the decision to deny Schuttpelz's motion to suppress "presents solely a legal question, and thus we review it de novo." *United States v. Buford*, 632 F.3d 264, 268 (6th Cir. 2011).

This Court "review[s] the district court's denial of jury instructions for abuse of discretion. The failure to give a requested jury instruction is an abuse of discretion when it is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Theunick*, 651 F.3d 578, 589 (6th Cir. 2011) (internal citations and quotation marks omitted). "We review de novo allegations of constitutional violations at the trial stage." *Johnson*, 627 F.3d at 582 (citing *United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000)).

### A.    Denial of Motion to Suppress Evidence

The Fourth Amendment protects an individual's right against unreasonable searches and seizures, including those conducted without a warrant based upon probable cause. U.S. Const. Amend. IV. However, "there [are] exceptions to the [Fourth Amendment's] warrant requirement." *United States v. U.S. Dist. Ct. for the E. Dist. of Mich., S. Div.*, 407 U.S. 297, 318 (1972). The district court based its decision to deny Schuttpelz's motion upon finding the existence of such an exception, specifically the "vehicle search exception" as defined by *Thornton v. United States*. 541 U.S. 615, 623-24 (2004) ("So long as an arrestee is the sort of 'recent occupant' of a vehicle such as petitioner was here, officers may search that vehicle incident to the arrest." (footnote omitted)). Under this exception, which the district court found was upheld by the United States Supreme Court in *Gant*, 129 S. Ct. at 1714 ("[W]e also conclude that circumstances unique to the automobile

context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle."), the district court determined that the search of Schuttpelz's vehicle was permissible because there was probable cause to arrest Schuttpelz and probable cause for the officers to search his vehicle for evidence of the crimes that precipitated his arrest.

Schuttpelz argues that the district court should have granted his motion to suppress the laptop and cell phone evidence because, under *Gant*, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 129 S.Ct. at 1723. Here, Schuttpelz was secured away from the vehicle at the time the search took place and, Schuttpelz argues, there was no probable cause to believe the vehicle held evidence of the offense for which he was arrested.

Under the exclusionary rule, prosecutors are barred from introducing evidence obtained in violation of the Fourth Amendment. *Davis*, 131 S. Ct. at 2423. The Government argues that the evidence obtained from the search of the vehicle was properly admitted because, in conducting the search, the agents relied in good faith on pre-*Gant* case law that permitted such a search at the time. We agree.

*Gant* was decided in 2011, four years after the search of Schuttpelz's vehicle. Under the Supreme Court's recent decision in *Davis*, "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *Id.* at 2423-24. Prior to *Gant*, we had consistently held that, "once a police officer has effected a valid arrest, that officer can search the area that is or was within the arrestee's control. We, like the majority of other circuits,

interpreted [*New York v. Belton*, 453 U.S. 454 (1981),] to allow law enforcement officers to search a vehicle incident to a lawful custodial arrest of its occupants without a warrant or probable cause, even after the arrestee was handcuffed and placed in the backseat of a police cruiser." *Buford*, 632 F.3d at 269 (citing *United States v. Patterson*, 993 F.2d 121, 123 (6th Cir. 1993) (per curiam); *United States v. Nichols*, 512 F.3d 789, 797 (6th Cir. 2008)) (internal quotation marks omitted). Both this Court in *Buford* and the Supreme Court in *Davis* have determined that evidence cannot be excluded under *Gant* where the Government's search was undertaken with reasonable reliance on existing law at the time. *Buford*, 632 F.3d at 276-77 ("We therefore hold that the district court erred in granting Buford's motion to suppress. A police officer who reasonably relies on settled circuit precedent that authorizes the search of a vehicle acts in objective good faith . . . . Thus, the judicially-created exclusionary rule does not apply and suppression is not warranted.").

The agents executed the search of Schuttpelz's vehicle "in objectively reasonable reliance" on the law as defined by this Court at the time of the arrest: the tractor-trailer was within Schuttpelz's control immediately prior to his arrest, and the agents did not need probable cause to search it. *See id.*; *see also Patterson*, 993 F.2d at 123 (holding, prior to *Gant*, that "police may search a vehicle incident to arrest even after the arrestee was handcuffed and placed in the backseat of a police cruiser"). Because the evidence uncovered during the search was admissible under *Davis* and *Buford* due to the agents' good-faith reliance on pre-*Gant* law, we find the district court properly denied Schuttpelz's motion to suppress evidence.

    **B.**    **Denial of Request for Entrapment Jury Instruction**

"A valid entrapment defense requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity." *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002) (citing *United States v. Nelson*, 922 F.2d 311, 317 (6th Cir. 1990)). "To be entitled to an entrapment instruction, the defendant must come forward with evidence to support both elements of the defense." *Id.* (citation omitted). The defendant "is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." *Mathews v. United States*, 485 U.S. 58, 62 (1988).

Schuttpelz appeals the district court's denial of his request for a jury instruction on entrapment, arguing that the district court erred in finding that he had not presented sufficient evidence demonstrating that he was not predisposed to commit the criminal acts and in finding that the Government had not induced his behavior.

### i. Elements of an Entrapment Defense

"Where the evidence 'clearly and unequivocally establishes that [the defendant] was predisposed,' the district court is justified in denying an entrapment instruction." *Khalil*, 279 F.3d at 365 (quoting *Nelson*, 922 F.2d at 317; citing *United States v. Elder*, 90 F.3d 1110, 1135 (6th Cir.1996)). A predisposition analysis "focuses upon whether the defendant was an 'unwary innocent' or instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Khalil*, 279 F.3d at 365 (quoting *Mathews*, 485 U.S. at 63) (internal quotation marks omitted). In determining the existence of predisposition, we consider the following factors, *id.* (alterations in original) (citing *United States v. Barger*, 931 F.2d 359, 366 (6th Cir. 1991)), among others:

[1] the character or reputation of the defendant, including any prior criminal record;
[2] whether the suggestion of the criminal activity was initially made by the Government;
[3] whether the defendant was engaged in the criminal activity for profit;
[4] whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and
[5] the nature of the inducement or persuasion supplied by the government.

Schuttpelz argues that the evidence does not demonstrate a predisposition to engage in sex with young children. Schuttpelz claims on appeal that his conversations with Shannon were based upon an interest in building a romantic relationship with her, not her children, and that any interest he had in sexual encounters with children was fantasy and not a real-world interest; he claims "[t]here is a substantial difference in the scientific literature regarding adult males that are interested in teenagers for sexual pleasure as opposed to those attracted to small children."

However, under the factors in *Khalil*, there is an abundance of evidence demonstrating Schuttpelz's predisposition to engage in criminal sexual activity with minors. This evidence includes: his extensive collection of child pornographic images and videos; his status as a registered sex offender for molesting a thirteen-year-old girl; his apparent understanding of the subtle word signals for sexual activities with children in the undercover agents' online profiles; his initiation of contact with the agent posing as Shannon; his statements to Shannon that he wanted to move forward with his plan to visit and engage in sexual activity with her daughters, in response to several statements by her offering him opportunities to back out of the plan; and his numerous internet chats aimed at engaging in sexual encounters with minors. *See United States v. Moore*, 916 F.2d 1131, 1137-39 (6th Cir. 1990) (finding that a defendant who, prior to his interaction with undercover agents, "maintained a substantial collection of hard core pornographic materials and engaged in

related criminal activity involving minors" had not met his burden of demonstrating lack of predisposition).

Because Schuttpelz failed to demonstrate a lack of predisposition, the district court did not abuse its discretion in denying Schuttpelz's request for a jury instruction on the entrapment defense. Thus, we need not address the other element of an entrapment defense, government inducement.

###    ii.    Sixth Amendment

Schuttpelz also argues that the Sixth Amendment right to present a defense guarantees him a right to his requested jury instruction. Because Schuttpelz has not demonstrated a factual or legal basis for an entrapment defense, this argument fails. "A trial judge is not required to adopt the language suggested by a defendant in the Court's instructions to the jury. [H]owever, when a theory of defense finds some support in the evidence and in the law, a defendant is entitled to some mention of that theory in the instructions." *Theunick*, 651 F.3d at 589 (internal citations and quotation marks omitted).

### III.

For the foregoing reasons, we **AFFIRM** Schuttpelz's conviction.